CULPEPPER, Judge
(dissenting).
Penalties and attorney’s fees may not be assessed under LSA-R.S. 22:658 unless the failure to pay workmen’s compensation was “arbitrary, capricious, or without probable cause.” In my view, the insurer here was clearly not arbitrary or capricious.
The facts show that on March 16, 1968, plaintiff was working with a crew on an oil well. He was standing on a level approximately 2y/i to 4 feet above the ground. He requested a fellow employee to throw him a rag. As plaintiff stepped back to *610 catch the rag, he lost his balance. He grasped an object called a gin pole and slid down it a distance of 21/2 to 4 feet to the ground below. The fellow employee caught plaintiff, partially breaking his descent. Plaintiff continued to work for about 7 hours. Under these facts, it is seen that the accident was not of a type which ordinarily causes severe injuries.
Plaintiff was seen initially by Dr. H. J. Sabatier, a general practitioner of Jennings, who placed him in the hospital and tentatively diagnosed a ruptured inter-vertebral disc. He referred plaintiff to Drs. Campbell and Phillips, specialists in orthopedic surgery. These specialists diagnosed a “grade 1 spondylolisthesis”, the least severe of the 4 grades of this condition. Recovery usually requires about 6 months.
As is shown by the November 7 report of Dr. Phillips, quoted in the majority opinion, he saw and treated plaintiff at monthly intervals from May until November of 1968. Under this conservative treatment, plaintiff recovered from all physical disability. However, he became nervous and depressed and Dr. Phillips did not know whether plaintiff would return to work, even though physically capable of doing so. In the last two sentences of his November 7 report, Dr. Phillips states: “From my most recent examination, I would say that the patient is capable of return to his previous work, with respect to the strength of his back. However, his attitude is such that I doubt that anything I can do that will return him to his previous work.”
On receipt of Dr. Phillips’s report of November 7, 1968, defendant’s attorney, Mr. Meredith Holt, discussed the report with the doctor. At the trial, Dr. Phillips testified as follows regarding this discussion:
“Q You and I have discussed the report or the statements that you’ve contained — that you put in your report of November 7th, haven’t we, doctor ?
“A Yes, sir.
“Q And at that time you and I discussed the last paragraph of your report and particularly that statement there in which you said, from my most recent examination I would say that the patient was capable of returning to his previous work with respect to strength of his back.
“A Yes, sir, that’s what I meant.
“Q And you and I also discussed the sentence where you said, however, his attitude is such that I doubt that anything I can do that will return him to his previous work.
“A That’s right.
“Q But you felt then, that from the— any disability that may have arose from his injury to his back had been cured from an orthopedic standpoint ?
“A Right.
“Q And if anything else developed out of that, that was not within the realm of your professional kin?
“A That’s right.
“Q But you did feel that he had recovered from any sprain to his back?
“A Yes, sir.
“Mr. Holt: Thank you, Doctor.
“Re-cross Examination
“By Mr. Quienalty:
“Q But he was not cured?
“A Well, with respect to his back, he had a weakened back to start with. I’m sure it’s just as weak now as it was in March the 1st, 1968. I don’t think it’s considerably weaker now; I think it’s about the same as it *611 was before he was injured. And I don’t think myself performing a spinal fusion on him will improve him enough for me to consider it.
“Q Referring to this particular paragraph, orthopedically speaking you had done what you could ?
“A Right.
“Q But when you let him know, you did not feel he was cured and about to go to work ?
“A That’s right, and then, a lot of it was because of his mental attitude and his depression, anxiety, such as that.
“Mr. Quienalty: Thank you.
“Re-direct Examination
“By Mr. Holt:
“Q Doctor, again, as I recall in our discussion you didn’t tell me that you didn’t—
“Mr. Quienalty: Objection, Your Honor.
“Objection—
“Mr. Holt: Well I’m asking the doctor.
“The Court” Wait. Now, let him finish the question, Mr. Quienalty, then you can raise your objection and the Court’ll rule on it.
“Q Did you tell me, doctor, that you did not think that Mr. Gary could gq back to work?
“A I did not think he could go back to work?
“Q Yes, did you tell me that?
“A Well that was what we decided on in the last paragraph, I believe, wasn’t it?
“Q That’s what you told Mr. Quienalty, but did you tell me that when we discussed your report?
“A Well I didn’t think he could go back to work because of his mental attitude.
“Q But from his back standpoint?
“A Back standpoint I believe it’s as good now as it was before he got hurt.
“Q And therefore you stated — you made the statement that you felt that he was capable of returning to his previous work?
“A With respect to the strength of this back.
“Mr. Holt: Yes. Thank you. That’s all.”
We must remember that plaintiff did not plead nor prove traumatic neurosis or any other disability due to a mental condition. Although Dr. Sabatier, the treating physician, prescribed medication for plaintiff’s nervous condition and Dr. Phillips said he didn’t know whether plaintiff would return to work, plaintiff was never sent to a psychiatrist. There is no expert medical opinion in this record by a psychiatrist or any other physician that plaintiff was disabled by a mental condition. The substantial issue at the trial was whether plaintiff’s physical disability continued beyond the date on which compensation payments were terminated. It was a close question with conflicting expert medical opinions. However, defendant concedes plaintiff’s testimony preponderated on this issue. The only issue on appeal is penalties and attorney’s fees.
Under the circumstances, I strongly disagree with the majority’s finding that defendant was arbitrary, capricious, or without probable cause. The defendant terminated compensation payments on the basis of a report by the treating orthopedist which states flatly that from an orthopedic viewpoint plaintiff was able to return to work. Dr. Phillips conjectured that he didn’t know whether plaintiff would return to work because of his mental *612 attitude. But there was not even a suggestion that plaintiff was suffering from any disabling mental condition. Can defendant be held arbitrary or capricious where the physician’s report states that plaintiff is physically able to return to work, but the doctor doesn’t know whether he will do so or not? The answer to this question seems obvious to me.
For the reasons stated, I respectfully dissent.
On Application for Rehearing.
Rehearing denied.
SAVOY and CULPEPPER, JJ., are of the opinion that a hearing should be granted.